| | | |
|---|---|---|
| **UNITED STATES DISTRICT COURT** | | **JS-6** |
| **CENTRAL DISTRICT OF CALIFORNIA** | | |

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 24-9098-JFW** | Date: March 18, 2025 |
| Title: | In Re Gustavo Jose Berrocal<br>Gustavo J. Berrocal, Jr. -v- CoastHIlls Credit Union | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly**<br>Courtroom Deputy | **None Present**<br>Court Reporter |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:**<br>None | **ATTORNEYS PRESENT FOR DEFENDANTS:**<br>None |

| | |
|---|---|
| **PROCEEDINGS (IN CHAMBERS):** | **ORDER AFFIRMING BANKRUPTCY COURT'S SEPTEMBER 27, 2024 MEMORANDUM OF DECISION AND JUDGMENT** |

On October 22, 2024, Appellant Gustavo J. Berrocal, Jr. ("Berrocal") filed an appeal from the United States Bankruptcy Court's September 27, 2024 Memorandum of Decision and Judgment (Bankruptcy Court Docket No. 57) (the "September 27, 2024 Memorandum of Decision"), including the denial of the motion in limine.

On December 13, 2024, Berrocal filed his Opening Brief. On January 10, 2025, Appellee CoastHills Credit Union ("CoastHIlls") filed their Reply Brief. On January 21, 2025, Berrocal filed a Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found this matter appropriate for submission on the papers without oral argument. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**

  **A.   CoastHills' Loan to Berrocal**[1]

On or about January 11, 2023, Berrocal completed, signed, and submitted to CoastHills an application requesting an unsecured personal loan in the amount of $45,000 (the "Application").

---

[1] Because the subject of this appeal is limited to the issue of whether the personal loan for $45,000 that Berrocal obtained from CoastHills is dischargeable in bankruptcy, the Court will only discuss the facts relevant to this appeal, and not the facts related to Berrocal's bankruptcy.

The Application provided that the purpose for the requested loan was "Repair (Auto/Home)."[2]  The Application also provided above Berrocal's signature that "[b]y signing or otherwise authenticating below, you promise that everything you have stated in this application is correct to the best of your knowledge."  During an interview regarding his Application, Berrocal informed a representative of CoastHills that the loan was needed to remodel his kitchen, floors, and bathroom water system.

On January 11, 2023, CoastHills approved Berrocal's Application, and the parties entered into a Loan and Security Agreement and Disclosure Statement (the "Loan Agreement").  The Loan Agreement provided that CoastHills would loan Berrocal $45,000 for a period of five years, and that Berrocal would repay the loan in monthly installments at an interest rate of 9.490 percent.  The Loan Agreement also provided that Berrocal would be in default if he "made any false or misleading statement in [the Loan Application]."  The loan of $45,000 was disbursed by CoastHills to Berrocal (the "Loan").

Once Berrocal received the Loan proceeds, he invested the entire $45,000 in crypto currency, and those proceeds were lost and never recovered.  During trial, Berrocal admitted that he never intended on using any of the Loan proceeds to remodel his Home.  Instead, Berrocal testified that his intent was to use all of the Loan proceeds to invest in crypto currency.  However, CoastHills does not extend loans for the purposes of investing in crypto currency because it views such loans as "high risk" and akin to "gambl[ing] at the casino."

Berrocal never made a single payment on the Loan.  Instead, on March 31, 2023, Berrocal filed a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code.

### B.    Berrocal's Bankruptcy and Related Adversary Proceeding

After Berrocal filed his bankrutpcy petition on March 31, 2023, CoastHIlls filed an adversary proceeding against Berrocal on May 12, 2023, entitled *CoastHills Credit Union v. Gustavo Jose Berrocal*, Case No. 9:23-ap-0107-RC (the "Adversary Proceeding").  In its Complaint to Determine Discharge of Debt [11 U.S.C. § 523] (the "Complaint"), CoastHills alleged that the Loan was procured through actual fraud by Berrocal's intentional "false and material representations concerning the purpose of the loaned funds."  Because of this purported fraud, CoastHills alleged in its sole cause of action in the Complaint that the Loan should not be subject to discharge pursuant to 11 U.S.C. 523(a)(2).

On July 19, 2024, the Bankruptcy Court held a bench trial on Coasthills' Complaint in the Adversary Proceeding.  During the bench trial, Berrocal made a motion for directed verdict (and a renewed motion for directed verdict) on the grounds that the loss suffered by Coasthills was not the proximate result of Berrocal's misrepresentations about the purposes of Loan proceeds, but the result of Berrocal's inability to make the payments on the Loan and Coasthills' failure to ensure that Berrocal could make those payments.  The Bankruptcy Court took the motion for directed verdict under submission and addressed it as part of its September 27, 2024 Memorandum of Decision.

### C.    The Bankruptcy Court's September 27, 2024 Memorandum of Decision

---

[2]  In 2020, Berrocal purchased a home at 522 Amber Lane, Santa Maria, California (the "Home").

On September 27, 2024, the Bankruptcy Court entered its September 27, 2024 Memorandum of Decision. In its September 27, 2024 Memorandum of Decision, the Bankruptcy Court granted judgment in favor of CoastHills on the sole cause of action alleged in its Complaint in the Adversary Proceeding, and, as a result, denied Berrocal a discharge pursuant to 11 U.S.C. 523(a)(2)(A) for the Loan from CoastHills in the amount of $46,351.90 ($45,000 + interest). The Bankruptcy Court also ruled on a motion in limine filed by Berrocal in its September 27, 2024 Memorandum of Decision.

The decisions made by the Bankruptcy Court in its September 27, 2024 Memorandum of Decision were made after it carefully and exhaustively considered all of the evidence and testimony presented at the bench trial and all of the arguments raised by the parties.[3] Specifically, the Bankruptcy Court did not issue its September 27, 2024 Memorandum of Decision until after it had heard testimony from Berrocal and Nicholas Taylor, the collections manager for CoastHIlls, and considered the twelve exhibits moved into evidence by the parties. The Bankruptcy Court also listened to the opening and closing statements presented by counsel for Berrocal and CoastHIlls. The September 27, 2024 Memorandum of Decision, which is fifteen pages, is comprehensive and detailed.

1.  **Berrocal's Motion in Limine**

On June 20, 2024, Berrocal filed a Motion in Limine (the "Motion"). On June 27, 2024, CoastHIlls filed its Opposition. On June 28, 2024, Berrocal filed a Reply. In his Motion, Berrocal sought to exclude any parol evidence concerning any alleged oral representations regarding what Berrocal intended to do with the proceeds from the Loan. Berrocal argued that the parol evidence rule precludes testimony concerning all alleged oral agreements made by him because the Loan Agreement was fully integrated. In its Opposition, CoastHIlls argued that the Motion failed to specify what evidence Berrocal sought to exclude and that the issues alleged in CoastHIlls' Complaint fell under the fraud exception to the parol evidence rule.

On July 19, 2024, prior to the bench trial, the Bankruptcy Court issued a tentative ruling on Berrocal's Motion. The parties submitted on the tentative ruling, and the Bankrupcty Court denied Berrocal's Motion. In its September 27, 2024 Memorandum of Decision, the Bankruptcy Court included its ruling denying Berrocal's Motion. Specifically, after discussing in details the contours of the parol evidence rule, the Bankruptcy Court concluded that:

> Here, [CoastHIlls] alleges through the Complaint that [Berrocal] committed a fraud through intentional misrepresentations, thus inducing [CoastHIlls] to enter into the Loan through that fraud. The fraud exception to the parol evidence rule is present. The Motion is denied.

2.  **The Bankruptcy Court's Decision on the Dischargeability of the Loan**

---

[3]  Because this Court concludes after a thorough review that the Bankruptcy Court's detailed description of the testimony and evidence at the bench trial in its September 27, 2024 Memorandum of Decision is accurate, the Court adopts the description contained in the September 27, 2024 Memorandum of Decision.

**Pursuant to 11 U.S.C. § 523(a)(2)(A)**

In reaching its decision to deny Berrocal a discharge pursuant to Section 523(a)(2)(A), the Bankruptcy Court considered each of the five elements necessary to demonstrate the applicability of Section 523(a)(2)(A), and concluded that CoastHIlls had demonstrated the non-dischargeability of the Loan by a preponderance of the evidence.  With respect to the representation element, the Bankruptcy Court concluded that:

"A stated purpose of a loan can be a representation for the purposes of §523(a)(2)(A)." *In re Johnson*, 638 B.R. 782, 793 (Bankr. C.D. Cal. 2022)(*citing In re Reingold*, 2013 WL 1136546 *7-8 (9th Cir. BAP 2013)).  "'Ordinarily, a promise of the borrower that the funds borrowed will be used for a specific purpose would not be material' unless the debtor never intended to use the funds for the purpose stated." *In re Bic Pho,* 2015 WL 6122184 *12 (Bankr. N.D. Cal. 2015)(*citing In re Weinhardt*, 156 B.R. 677, 680 (Bankr. M.D. Fla. 1993)).  "'A material fact is one touching upon the essence of the transaction.'" *In re Bic Pho*, 2015 WL 6122184 *12 (Bankr. N.D. Cal. 2015)(*citing* 4 Collier on Bankruptcy ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

In the present case, [Berrocal] made oral and written representations to [CoastHIlls] prior to the Agreement and the Loan being funded.  In the Application itself, [Berrocal] represented that the Loan was to be used for "Repair (Auto/Home)."  *See* Trial Exhibit 1, p. 1.  In an interview with an employee of [CoastHIlls] at the time of the Application, [Berrocal] at trial answered "[y]es" to the question, "[d]id you make a representation when you were getting the loan that you needed the loan to remodel your kitchen, floors and bathroom water system?"  *See* Trial Transcript, p. 57, lines 9-12.

With respect to the knowledge of the falsity of the representations element, the Bankruptcy Court concluded that:

Here, [Berrocal's] knowledge of the falsity of the aforementioned representations is clear.  At trial, the following question was posed to [Berrocal]: "[y]ou misrepresented the purpose for the loan when you accepted it for home repairs when you knew it was for crypto currency?"  *See* Trial Transcript, p. 55, lines 18-20. [Berrocal] responded, "[y]es."  *See id.* at line 21.  At another point [Berrocal] was asked, "[d]id you make a representation when you were getting the loan that you needed the loan to remodel your kitchen, floors and bathroom water system?"  *See id.* at p. 57, lines 9-11.  Again, [Berrocal's] response was "[y]es."  *See id.* at line 12. However, Defendant answered "[t]hat's correct" to the question, "[i]sn't it true that you knew you were going to use those funds for crypto currency before the loan was funded?"  *See id.* at p. 49, lines 11-13.  At trial [Berrocal] answered "[n]o" to the question, "[a]t the time that you applied for this loan did you actually intend to use the $45,000 for the purpose of remodeling any part of your home?"  *See id.* at p. 51, lines 20-24.  At trial [Berrocal] answered "[y]es" to the question, "[b]ut at the time that you applied for the loan you already knew you were going to use the funds for crypto currency, correct?"  *See id.* at p. 54, lines 12-15.

The Court finds that [Berrocal] knew at the time of the representations made in the

Application and in the interview with an employee of [CoastHIlls], regarding the purpose of the Loan proceeds, that the representations were false.

With respect to the intent to deceive element, the Bakruptcy Court concluded that:

"Because direct evidence of intent to deceive is rarely available, 'the intent to deceive can be inferred from the totality of the circumstances . . . ' " *In re Tolman*, 491 B.R. 138, 153-154 (Bankr. D. Id. 2013). "The fact-finder must consider all of the facts and circumstances of the case to determine if the debtor lacked the requisite intent to perform." *In re Miller*, 310 B.R. 185, 196 (Bankr. C.D. Cal. 2004)(*citing In re Briese*, 196 B.R. 440, 452 (Bankr. W.D. Wis. 1996)).

Here, [Berrocal] sought a "personal loan" from [CoastHIlls] to invest in crypto currency. *See* Trial Transcript, p. 53, lines 4-7. In asking [CoastHIlls] for a personal loan, [CoastHIlls] informed [Berrocal] that it offered personal loans for the purpose of home repair. *See id.* at lines 5-7 ("Well, we have the personal loan, home repair."). However, again, [Berrocal] required the Loan not for home repairs, but to invest in crypto currency. *See id.* at pp. 49, lines 11-13; 51, lines 18-24; 55, lines 18-21. [Berrocal] never mentioned in the Application, or to [CoastHIlls'] employee during the interview at the time the Application was submitted, that the Loan would be used entirely to fund a crypto currency investment. This was because [CoastHIlls] did not extend loans for the purpose of investing in crypto currency. At trial [Berrocal] was asked "[w]hy didn't you tell the credit union employee when they offered you the loan for the purpose of home repair, why didn't you tell them that it was not for home repairs." *See id.* at p. 54, lines 6-7. [Berrocal] responded with, "[b]ecause that was what was existing, so I wanted to follow their process." *See id.* at lines 10-11.

The evidence shows that [Berrocal] became aware of the type of personal loans that [CoastHIlls] extended, home improvement loans. [Berrocal] misrepresented the purpose of the Loan (*i.e.*, home improvement), because that was the only existing personal loan available through [CoastHIlls]. The totality of the circumstances illustrate that [Berrocal] intended to misrepresent the purpose of the Loan to deceive [CoastHIlls] into extending the Loan.

With respect to the reliance element, the Bankruptcy Court concluded that:

"Although the statute does not state what degree of reliance is necessary for application of section 523(a)(2)(A), the Supreme Court has held that the creditor's reliance need be only justifiable*." In re Apte*, 96 F.3d 1319, 1322 (9th Cir. 1996) (*citing Field v. Mans*, 516 U.S. 59 (1995)). "'[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation. [ ] Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud.'" *Id.* "In considering whether reliance was justifiable, 'the court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor.'" *In re Johnson*, 2022 WL 16731090 at * 5. "Justifiable reliance is a lower standard of care than reasonable reliance." *In re Del*

*Valle*, 577 B.R. 789, 808-809 (Bankr. C.D. Cal. 2017)(citing *In re Eashai*, 87 F.3d 1082, 1090-91 (9th Cir. 1996)). "Such reliance is a mixture of objective and subjective standards, which takes into account knowledge and the relationship of the parties." *Id.* (*citing In re Apte*, 180 B.R. 223 (9th Cir. BAP 1995)).

In the case at bar, [Berrocal] had a lending relationship with [CoastHIlls] prior to the Application being submitted. *See* Trial Exhibit 5. [Berrocal] lived in the Home. *See* Trial Exhibit 2. [Berrocal] disclosed in the Application that the Loan proceeds would be used for "Repair (Auto/Home)," and understood that [CoastHIlls] would "rely on the information in this application and [Berrocal's] credit report to make its decision." *See* Trial Exhibit 1, p. 1. There was also an interview as between an employee of [CoastHIlls] and [Berrocal] where, again, [Berrocal] represented that the Loan was required so that [Berrocal] could remodel his kitchen, floors and bathroom water system. *See* Trial Transcript, p. 57, lines 9-12. In viewing the circumstances surrounding [Berrocal's] applying for the Loan, the Court finds that [CoastHIlls] justifiably relied on the representations of [Berrocal].

Through [Berrocal's] motion for directed verdict, [Berrocal] argues that "[CoastHIlls] has failed to establish reasonable reliance. They never made any effort to determine that [Berrocal] could afford this loan." *See id.* at p. 57, lines 21-24. [Berrocal] focuses on the fact that [Berrocal] could never afford to repay the Loan based on net income, which, argues [Berrocal], [CoastHIlls] failed to fully investigate prior to extending the Loan. *See id.* at pp. 57-58. [Berrocal] argues that the reason [CoastHIlls] is out of the Loan proceeds is based on a poor credit decision, and not due to [Berrocal's] use of the Loan proceeds. The Court disagrees with this analysis.

First, [CoastHIlls] did conduct a credit worthiness process. [CoastHIlls] reviewed [Berrocal's] stated income in the Application, ran a credit check with credit reporting agencies, conducted an interview of [Berrocal], and examined its prior loan history with [Berrocal]. Second, and more importantly, the analysis here focuses on the representations of [Berrocal] to [CoastHIlls] in connection with the Application and pre-funding interview, the falsity of those representations, and [Coasthill's] reliance on those representations. Whether [Berrocal] could afford to repay the Loan is not a part of this analysis.

What is more, using [Berrocal's] logic, any debtor could make fraudulent misrepresentations in connection with obtaining a loan, and so long as it can be proven that the debtor was unable to repay the loan at the time it was extended, the justifiable reliance element of 11 U.S.C. §523(a)(2)(A) could not be met. The Court finds this argument to be without merit.

With respect to the damages element, the Bankruptcy Court concluded that:

"The causation factor in a fraud analysis is essentially a 'but for' analysis . . . " *In re Del Valle*, 577 B.R. at 789. "[T]o prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from its reliance on a representation that was made with the intent to deceive." *In re Brown*, 217 B.R. 857, 863 (Bankr. S.D. Cal. 1998) *(citing In re Britton*,

950 F.2d 602, 604 (9th Cir. 1991)).  The Restatement of Torts "explains that proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss [ ]; and (2) legal causation, which requires a creditor's loss to 'reasonably be expected to result from the reliance.'"  *Id.*  "In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud."  *Id.*  (*citing In re Siriani,* 967 F.2d 302, 306 (9th Cir. 1992)).

Here, but for the representations regarding the use of the Loan proceeds, [CoastHIlls] would not have extended the Loan.  On behalf of [CoastHIlls], Mr. Taylor testified at trial that [CoastHIlls] does not extend loans for the purposes of investing in crypto currency.  *See* Trial Transcript, p. 43, lines 16-24.  Mr. Taylor was asked for what reason does [CoastHIlls] not extend loans for the purposes of crypto currency investment, and his response was that "[c]rypto currency would be a high risk loan so we wouldn't want to take on that added risk for such a high risk loan."  *See id.* at pp. 43-44. Mr. Taylor was asked at trial whether a loan for the purposes of investing in crypto currency would "be akin to making a loan for the purposes of taking the funds to [gamble] in Las Vegas," to which he responded, "[i]t would be pretty much very similar, yeah."  *Id.* at p. 44, lines 4-6.

[Berrocal's] representations to [CoastHIlls] regarding the purpose of the Loan proceeds was the proximate cause of [CoastHIlls'] damages.  Absent the representations there would be no loan from [CoastHIlls] to [Berrocal].  Further, [Berrocal's] use of the Loan proceeds was, according to [CoastHIlls], and undisputed by [Berrocal], "high risk," and akin to "gambling."  Logic dictates that [CoastHIlls] does not extend these high risk loans because it reasonably expects the losses similar to what [Berrocal] in-fact suffered with their investment of the Loan proceeds in crypto currency.

[Berrocal] renews its motion for directed verdict on the grounds that the representations of [Berrocal] were not the proximate cause of [CoastHIlls'] damages. Again, [Berrocal] argues that it was [Berrocal's] inability to repay the Loan at the time the Application was submitted that was the proximate cause of [CoastHIlls'] damages. The Court disagrees with the analysis. [Coathills] has established that but for the representations of [Berrocal], the Loan would never have been extended. [Berrocal's] credit worthiness would not have made a difference. [CoastHIlls] has established that it does not extend loans for the purposes the Loan was ultimately used for. [CoastHIlls] views crypto currency investments as being akin to gambling, and, as with most gambling, it did not pay off for [Berrocal]. [Berrocal] lost the entirety of the Loan proceeds in the investment, a reasonably expected result of gambling.

Put another way, investing the Loan proceeds into the Home would generally result in additional value to the Home. [CoastHIlls] does not view home improvement loans as "high risk," because value is created through the use of such a loan.  "Gambling," on the other hand, generally has the opposite result.  The vast gambling temples of Las Vegas were not built on the good luck of players.

## II.  Issue on Appeal

The issue on appeal is whether the Bankruptcy Court erred in its September 27, 2024 Memorandum of Decision when it entered judgement in favor of CoastHills on the sole cause of action in its Complaint in the Adversary Proceeding, and denied Berrocal a discharge pursuant to 11 U.S.C. § 523(a)(2)(A) for the amount owed to CoastHills of $46,351.90.[4]

## III.  Legal Standard

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions.  *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Federal Rules of Bankruptcy Procedure 8013.  Generally, a district court reviews "the bankruptcy court's legal conclusions de novo, and . . . its factual findings for clear error."  *In re McKee*, 2025 WL 18626 (9th Cir. BAP Jan. 2, 2025) (*citing Oney v. Weinberg* (*In re Weinberg*), 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd,* 407 F. App'x. 176 (9th Cir. 2010)).  Under de novo review, the district court  "consider[s] a matter anew, as if no decision had been made previously." *Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 917 (9th Cir. 2014).  Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record.  *Retz v. Samson* (*In re Retz*), 606 F.3d 1189, 1196 (9th Cir. 2010).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

## IV.  Discussion

Berrocal argues that the Bankruptcy Court erred in concluding that the Loan should not be discharged because Berrocal misled CoastHIlls about the purpose of the Loan.  Berracol argues that it was CoastHills' failure to make sure he could afford to repay the Loan, no matter what the loan proceeds were used for, that led to CoastHills' loss of the $45,000 (plus interest) that it loaned to Berrocal.  In addition, Berrocal argues that the Banrktupcy Court erred because CoastHIlls failed

---

[4]  According to Berrocal, the issues on appeal are: (1) "[d]id the lower court commit an abuse of discretion in determining the Coast Hills loan was non-dischargeable?"; (2) "[d]id Coast Hills [*sic*] prove 'justifiable reliance' as required by 11 U.S.C. § 523(a)(2)(A) in making the $45,000 loan when it ignored the debtor's lack of ability to make payments on the loan? Put another way, did Coast Hills [*sic*] act as a reasonably prudent person in making the loan?"; (3) "[d]id the lower court err in concluding that 'Whether [Berrocal] could afford to repay the Loan is not a part of this analysis"; (4) [w]as the representation that Berrocal was going to use the loan proceeds for 'Home Auto/Repair' [*sic*] material when the loan was unsecured?"; and (5) "is it outcome determinative that Berrocal was never told the credit union's position on making risky loans? How was he supposed to know it mattered what he wanted to use the loan proceeds for?

to prove it's case. Specifically, Berrocal argues that there was no evidence presented at trial that he was ever informed of CoastHills' policy on not making "risky loans." In its Opposition, CoastHills argues that the Bankruptcy Court did not err in its decision because CoastHills met its burden of proving its claim under 11 U.S.C. § 532(a)(2). Specifically, CoastHills argues that the evidence presented at trial and Berrocal's testimony demonstrate that all of the elements of its claim under Section 532(a)(1) have been met.

### A.    The Legal Standard for Discharge under 11 U.S.C. § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2)(A), "[a] discharge under [11 U.S.C. § 1328(b)] does not discharge an indivudal debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Ninth Circuit has "consistently held that making out a claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate five elements: (1) the debtor made . . . representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made." *In re Sabban,* 600 F.3d 1219, 1222 (9th Cir. 2010) (*citing In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996)).

In addition, "[t]he creditor bears the burden of proving the applicability of § 523(a)(2)(A) by a preponderance of the evidence." *In re Sabban*, 600 F.3d at 1222 (*citing In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000)).

### B.    The Bankruptcy Court Did Not Err in Its September 27, 2024 Memorandum of Decision

Having considered all of the arguments made by the parties, and having carefully reviewed the record in the Adversary Proceeding, the Court concludes for the reasons discussed below that the Bankruptcy Court did not err in its September 27, 2024 Memorandum of Decision, and as a result, the September 27, 2024 Memorandum of Decision is affirmed. Specifically, the Court concludes that it is apparent from the testimony and evidence presented at the bench trial and by Berrocal's own admissions that the five elements necessary to demonstrate a claim of non-dischargeability under Section 523(a)(2)(A) have been satisfied.

In this case, the Court agrees with the Bankruptcy Court's conclusion that Berrocal misrepresented the purpose of the Loan on both the Application and during his interview with an employee of CoastHIlls by not informing CoastHIlls that he intended to use the Loan proceeds to invest in crypto currency and, instead, claiming that he was going to use the proceeds for home repairs. Indeed, Berrocal signed the Application, which stated above the signature line that "[b]y signing or otherwise authenticating below, you promise that everything you have stated in this application is correct to the best of your knowledge" despite the fact that he misrepresented in the Application that the proceeds of the Loan were for home repair. In addition, Berrocal testified at trial that he represented to CoastHIlls that he planned to use the proceeds from the Loan to remodel his kitchen floors and bathroom water system, even though he knew at the time he made those representations that he intended to use the Loan to invest in crypto currency. Moreover, the Court agrees with the Bankruptcy Court's conclusion that, considering the totality of the

circumstances, CoastHIlls adequately demonstrated that Berrocal intended to misrepresent the purpose of the Loan in order to deceive CoastHIlls into extending the Loan to him. For example, when asked at trial "[w]hy didn't you tell the credit union employee when they offered you the loan for the purpose of home repair, why didn't you tell them that it was not for home repairs," Berrocal testified "[b]ecause that was what was existing, so I wanted to follow their process."

In addition, the Court finds unpersuasive Berrocal's argument on appeal that the Bankruptcy Court's judgment should be overturned on the grounds that CoastHIlls did not justifiably rely on his misrepresentations regarding his intended use of the Loan proceeds. Instead, the Court agrees with the Bankruptcy Court's conclusion that CoastHIlls justifiably relied on Berrocal's misrepresentations based on the totality of the circumstances, including: (1) CoastHIlls' previous lending relationship with Berrocal; (2) Berrocal's ownership of the Home, which he lived in; (3) Berrocal's representation in the Application that the Loan proceeds would be used for "Repair (Auto/Home)"; (4) Berrocal's representation in the Application that he understood that CoastHIlls would "rely on the information in this application and" Berrocal's credit report in deciding whether to approve the Loan; (5) Berrocal's representation during an interview with an employee of CoastHIlls that he intended to use the Loan proceeds to remodel his kitchen, floors, and bathroom water system. The Bankruptcy Court also concluded, and this Court agrees, that CoastHIlls performed an appropriate credit worthiness process by reviewing Berrocal's stated income in the Application, running a credit check, interviewing Berrocal, and examining his prior loan history. In addition, the Bankruptcy Court astutely pointed out that "using [Berrocal's] logic, any debtor could make fraudulent misrepresentations in connection with obtaining a loan, and so long as it can be proven that the debtor was unable to repay the loan at the time it was extended, the justifiable reliance element of 11 U.S.C. § 523(a)(2)(A) could not be met. The [Bankruptcy] Court finds this argument to be without merit."

The Court also finds unpersuasive Berrocal's argument on appeal that the Bankruptcy Court's judgment should be overturned because no evidence was presented that Berrocal was ever told about CoastHIlls' policy on not making "risky loans." It is undisputed that Berrocal misrepresented to CoastHIlls why he was seeking the Loan. If Berrocal had not misrepresented the purpose of the Loan to CoastHIlls, the evidence demonstrates that CoastHIlls would never have issued the Loan. Berrocal's attempt to now try to benefit from his own deception is disingenuous, at best, and flies in the face of logic and the protections offered to creditors pursuant to 11 U.S.C. 523. Berrocal should not be permitted to benefit from his own misrepresentations.

Finally, the Court also agrees with the Bankruptcy Court's conclusion that Berrocal's misrepresentations regarding his intended use of the Loan proceeds caused CoastHIlls to suffer damages.

C.  **Berrocal Failed to File an Appendix for This Appeal**

Berrocal failed to file an appendix in this appeal. Although Berrocal filed an appendix on December 12, 2024 (*see* Docket No. 11), that appendix was stricken by the Court for Berrocal's failure to comply with paragraph 3(b) of the Court's Standing Order (*see* Docket No. 5), which provides, in relevant part, that:

> All documents filed electronically shall be filed in accordance with the Local Rule 5-4. Each PDF file shall contain no more than one document or exhibit, *see* Local Rule 5-4.3.1, and each document or exhibit shall be meaningfully described on the docket

such that the document or exhibit can be easily identified.

After his initial appendix was stricken by the Court, Berrocal never re-filed the appendix. Instead, the only appendix filed in this appeal is the one filed by CoastHills on January 10, 2025, when it filed its Opening Brief.  *See* Docket Nos. 18 and 19.  However, Federal Rule of Bankruptcy Procedure 8018(b) provides that "the appellant ***must*** serve and file with its principal brief excerpts of the record as an appendix," and details the specific documents that must be included in the appendix.  F.R.B.P. 8018 (b) (emphasis added).  In addition, Federal Rule of Bankruptcy Procedure 8009(b)(5) provides that:

> If the appellant intends to argue on appeal that finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits.

Complying with the Federal Rules of Bankruptcy Procedure and supplying this Court with an appendix that includes all of the relevant documents and evidence is "mandatory, not optional," and "[t]he burden is on the appellant."  *In re McCarthy*, 230 B.R. 414, 417 (9th Cir. BAP 1999). Berrocal's failure to comply with the Federal Rules of Bankruptcy entitles this Court to dismiss this appeal.  *Id.*

Accordingly, this appeal is also dismissed for Berrocal's failure to comply with the Federal Rules of Bankruptcy Procedure, the Local Rules, and this Court's Standing Order.

**V.     Conclusion**

For all the foregoing reasons, and having considered all of Berrocal's arguments on appeal, the Bankruptcy Court's September 27, 2024 Memorandum of Decision and Judgment is **AFFIRMED**, and this appeal is **DISMISSED with prejudice**.

IT IS SO ORDERED.